

RECEIVED VW
6/29/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

## EASTERN DIVISION

**MARY JONGUITUD,**

Plaintiff,

**1:26-cv-07561**
**Judge Edmond E. Chang**
**Magistrate Judge Young B. Kim**

v. Case No. ___RANDOM/CAT 1_____

**NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING; FIRST CENTENNIAL MORTGAGE CORPORATION n/k/a GUILD MORTGAGE COMPANY LLC; LINDA CALLAGHAN; ALTMAN, STRAUTINS & KROMM, LLC d/b/a KLUEVER LAW GROUP; GABRIELLE D. HOLLIS; DOES 1–20,**

Defendants.

# COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND JURY DEMAND

## I. INTRODUCTION

1. Plaintiff brings this action arising from Defendants' conduct relating to the origination, servicing, transfer, administration, collection, tax reporting, borrower designation, assignment activity, foreclosure-related conduct, and post-sale activity associated with the residential property located at 37452 East Park Lane, Lake Villa, Illinois.

2. Plaintiff does not seek review, reversal, modification, vacatur, or rejection of any state-court judgment.

3. Plaintiff instead challenges Defendants' independent conduct, including:
   a. servicing practices;
   b. disclosure violations;
   c. ownership and creditor-identification representations;
   d. tax-reporting activities;
   e. responses to Qualified Written Requests and Notices of Error;

Date: June 29 , 2026                                          Page:     1

Time:

f. debt-collection activities; and

g. post-sale conduct.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §1331.
5. Plaintiff asserts claims under:
   a. RESPA, 12 U.S.C. §2605;
   b. TILA, 15 U.S.C. §1641(g);
   c. FDCPA, 15 U.S.C. §1692 et seq.
6. Supplemental jurisdiction exists under 28 U.S.C. §1367.
7. Venue is proper under 28 U.S.C. §1391.

## III. PARTIES

8. Plaintiff Mary Jonguitud resides in Lake County, Illinois.
9. Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing serviced the Subject Loan and engaged in account administration, borrower communications, collection activity, tax-reporting activity, and related servicing functions concerning the Subject Property.
10. Defendant First Centennial Mortgage Corporation, now Guild Mortgage Company LLC, originated the Subject Loan.
11. Defendant Altman, Strautins & Krómm, LLC d/b/a Kluever Law Group participated in foreclosure litigation.
12. Defendant Gabrielle D. Hollis participated in foreclosure litigation.
13. DOES 1–20 are persons or entities whose identities remain unknown.
14. Throughout 2024–2026, Plaintiff repeatedly sought documentation concerning ownership, servicing authority, borrower designation, assignment activity, tax reporting, and post-sale conduct. Plaintiff contends complete supporting documentation was not provided.

## IV. FACTUAL ALLEGATIONS

## A. LOAN ORIGINATION AND MORTGAGE DOCUMENTS

15. On October 4, 2021, Plaintiff Mary Jonguitud and her husband, Samuel S. Jonguitud, executed loan documents concerning the property located at 37452 East Park Lane, Lake Villa, Illinois (the "Subject Property"). (See Exhibit A.)
16. The Promissory Note identifies Mary Jonguitud and Samuel S. Jonguitud as borrowers. (See Exhibit A.)
17. Plaintiff possesses multiple versions of the mortgage instrument associated with the Subject Loan. (See Exhibits A and B.)
18. Those documents include:

Date: June 29 , 2026                                                       Page:     2

Time: 6:00 AM

a. an unsigned mortgage timestamped October 1, 2021, at approximately 12:55 p.m.;

b. an executed mortgage timestamped October 1, 2021, at approximately 12:55 p.m.; and

c. a recorded mortgage timestamped October 4, 2021, at approximately 11:01 a.m.

19. The recorded mortgage identifies Austin Jonguitud, a single man, whereas the Promissory Note identifies only Mary Jonguitud and Samuel S. Jonguitud as borrowers. (See Exhibits A and B.)

20. Austin Jonguitud did not execute the Promissory Note and was not obligated under the Note. (See Exhibit A.)

21. Plaintiff contends that the mortgage versions contain material differences concerning borrower designation and document preparation. (See Exhibits A and B.)

22. Plaintiff alleges that no notary was physically present during execution of the loan documents. (See Exhibit A.)

## B. FUNDING, ACQUISITION, AND ASSIGNMENT HISTORY

23. Plaintiff obtained warehouse-funding records involving First Horizon Mortgage Warehouse Lending and records identifying North American Title Company in connection with the loan transaction. (See Exhibit D.)

24. Plaintiff obtained records reflecting acquisition and servicing activity shortly after closing, including activity associated with October 13 and October 14, 2021. (See Exhibit D.)

25. On September 8, 2023, MERS executed an Assignment of Mortgage to NewRez, which was recorded on September 11, 2023. (See Exhibit C.)

26. Plaintiff alleges that NewRez engaged in servicing or acquisition-related activity before execution of the September 2023 Assignment of Mortgage. (See Exhibits C and D.)

27. Plaintiff further alleges that the Allonge associated with the Subject Loan identifies only Samuel Jonguitud and Mary Jonguitud and does not identify Austin Jonguitud. Plaintiff further alleges that the Allonge contains no execution date and reflects an endorsement by First Centennial Mortgage Corporation bearing the notation "Without Recourse." Plaintiff contends that the Allonge, when considered together with the Promissory Note, Recorded Mortgage, Assignment of Mortgage, and other loan records, raises questions concerning borrower designation, transfer chronology, ownership-related representations, and the documentation relied upon in connection with the Subject Loan. (See Exhibits A, B, and C.)

28. Plaintiff subsequently obtained copies of loan-origination and post-closing records from First Centennial Mortgage Corporation on or about April 9, 2024. Among those records was correspondence dated October 13, 2021, stating that the Subject Loan had been sold to "New Rez Fort Washington" and would thereafter be serviced by NewRez LLC d/b/a Shellpoint Mortgage Servicing. Plaintiff alleges

that she did not receive or possess that correspondence in October 2021 and first became aware of its contents upon reviewing records provided by First Centennial Mortgage Corporation in April 2024. (See Exhibit D.)

29. Plaintiff thereafter sought clarification concerning the identity of "New Rez Fort Washington," its relationship to NewRez LLC d/b/a Shellpoint Mortgage Servicing, the ownership interest allegedly acquired, and the documentation supporting the ownership-related representations reflected in the correspondence. (See Exhibits D, H, and I.)

30. Plaintiff sought clarification concerning the identity and authority of any entity identified as "GMNA II" in connection with the Subject Loan. (See Exhibits D, H, and I.)

## C. DEATH OF SAMUEL JONGUITUD AND ESTATE DESIGNATION

31. Samuel S. Jonguitud died on June 16, 2022. (See Exhibit E.)

32. Plaintiff provided Defendants with notice of death and a death certificate. (See Exhibit E.)

33. Beginning on or about November 4, 2022, Defendants used the designation "Estate of Samuel Jonguitud" in servicing records, account records, communications, and tax-reporting records. (See Exhibits F and G.)

34. Plaintiff alleges that no probate estate had been opened and no court-appointed representative existed at the time such designation was used.

35. Defendants continued using the Estate designation in account administration, communications, and tax reporting. (See Exhibits F and G.)

36. Plaintiff contends that Defendants thereafter utilized differing borrower and obligor designations in loan records, default-related communications, tax-reporting records, servicing records, and foreclosure-related filings, including references to Samuel S. Jonguitud, the Estate of Samuel Jonguitud, Mary Jonguitud, and Austin Jonguitud. (See Exhibits F, G, and J.)

## D. FORECLOSURE TIMELINE

37. A foreclosure complaint was filed on December 8, 2023. (See Exhibit J.)

38. Plaintiff disputed ownership, borrower designation, and document integrity during the foreclosure proceedings.

39. Summary judgment was entered on April 25, 2025. (See Exhibit J.)

40. A Sheriff's Sale occurred on December 2, 2025, through a credit bid of approximately $240,000. (See Exhibit J.)

41. The sale was confirmed on January 9, 2026. (See Exhibit J.)

42. Following entry of the order confirming the Sheriff's Sale, a notice pursuant to 735 ILCS 5/15-1508.5(e) was posted at the Subject Property on or about January 14, 2026. (See Exhibit J.)

### E. QWRS, NOTICES OF ERROR, AND REGULATORY COMPLAINTS

43. Plaintiff submitted Qualified Written Requests ("QWRs") and Notices of Error on June 11, 2025, October 31, 2025, and December 23, 2025. (See Exhibits H and I.)

44. Plaintiff also submitted complaints to the Consumer Financial Protection Bureau ("CFPB") and the Illinois Department of Financial and Professional Regulation ("IDFPR"). (See Exhibits H and I.)

45. Plaintiff contends that Defendants failed to adequately investigate or resolve the disputes identified in Plaintiff's correspondence. (See Exhibits H and I.)

46. Plaintiff's QWRs and Notices of Error concerned servicing-related information within the meaning of 12 U.S.C. § 2605(e), including account administration, borrower designation, payment application, servicing authority, and related matters concerning the Subject Loan. (See Exhibits H and I.)

47. Defendants were repeatedly placed on notice of Plaintiff's disputes through QWRs, Notices of Error, CFPB complaints, IDFPR complaints, and related correspondence. (See Exhibits H and I.)

### F. TAX REPORTING

48. Defendants issued Forms 1098 identifying "Estate of Samuel Jonguitud and Mary Jonguitud." (See Exhibit G.)

49. Plaintiff alleges that no agreement or court order authorized such designation.

50. Plaintiff received IRS Form 1099-A dated December 2, 2025. (See Exhibit G.)

51. Plaintiff contends that the borrower designations used in tax reporting are inconsistent with the original loan documents. (See Exhibits A and G.)

### G. POST-SALE CONDUCT

52. Plaintiff alleges that utility-account information was transferred to NewRez. (See Exhibit J.)

53. Plaintiff alleges that HOA representatives stated that NewRez represented itself as owner of the property. (See Exhibit J.)

54. On or about April 6, 2026, Plaintiff discovered the property listed through ServiceLink while appellate proceedings remained pending. (See Exhibit J.)

55. Plaintiff sought emergency relief after discovering such activity. (See Exhibit J.)

56. Plaintiff remained in possession of the Subject Property following the Sheriff's Sale and confirmation proceedings and alleges continuing uncertainty concerning creditor identity, servicing authority, borrower designation, tax reporting, ownership-related representations, and post-sale account administration. (See Exhibit J.)

57. Following confirmation of the Sheriff's Sale, post-sale notices and communications were directed to the Subject Property. (See Exhibit J.)

## COUNT I
## VIOLATION OF RESPA
## (12 U.S.C. § 2605)

58. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.
59. Defendant NewRez/Shellpoint acted as servicer of the Subject Loan.
60. Plaintiff submitted QWRs and Notices of Error concerning servicing-related information.
61. Defendants failed to adequately investigate, correct, or respond to Plaintiff's disputes.
62. As a direct result, Plaintiff incurred investigation costs, certified-mail expenses, record-request expenses, administrative burdens, and other actual damages.

## COUNT II
## VIOLATION OF TILA
## (15 U.S.C. § 1641(g))

63. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.
64. Ownership interests in the Subject Loan were transferred or claimed by entities other than the originating lender.
65. Plaintiff alleges that Defendants represented, reported, claimed, serviced, administered, acquired, enforced, and/or asserted rights concerning the Subject Loan and that ownership-related interests in the Subject Loan were transferred, acquired, assigned, or otherwise claimed by entities other than the originating lender. Plaintiff further alleges that such ownership-related activity triggered notice obligations under 15 U.S.C. § 1641(g), yet Plaintiff did not receive notice complying with the requirements of that statute.
66. Plaintiff did not receive statutorily compliant notice of transfer.
67. Plaintiff incurred actual damages as a result.

## COUNT III
## VIOLATION OF FDCPA
## (15 U.S.C. § 1692 et seq.)

68. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.
69. To the extent applicable, Defendants acted as debt collectors within the meaning of 15 U.S.C. § 1692a(6).
70. Defendants communicated with Plaintiff regarding the Subject Loan through servicing communications, account statements, tax reporting, and foreclosure-related correspondence and post-sale account administration.

Date: June 29 , 2026
Time: 6:00 AM

Page:    6

71. Plaintiff alleges that certain communications contained inconsistent or misleading representations concerning creditor identity, borrower designation, ownership, servicing authority, and collection authority.

72. Plaintiff further alleges that Defendants continued account administration, tax reporting, and collection-related communications after the Sheriff's Sale while appellate proceedings remained pending.

73. Plaintiff alleges that communications referencing "Estate of Samuel Jonguitud" and related tax reporting contributed to confusion concerning the identity of the obligor and creditor.

74. As a result of such communications, Plaintiff suffered actual damages, including investigation costs, administrative burdens, certified-mail expenses, and expenses incurred in responding to Defendants' conduct.

## COUNT IV

## DECLARATORY JUDGMENT

75. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

76. An actual and continuing controversy exists concerning creditor identity, servicing authority, borrower designation, tax-reporting authority, ownership-related representations, and post-sale account-administration activity relating to the Subject Loan and Subject Property.

77. Plaintiff seeks declaratory relief determining the respective rights, authority, obligations, and responsibilities of the parties concerning those matters.

## COUNT V

## INJUNCTIVE RELIEF

78. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

79. Plaintiff seeks prospective relief concerning future servicing conduct, reporting conduct, debt-collection conduct, borrower-designation activity, tax-reporting activity, and account-administration activity.

80. Plaintiff does not seek review, reversal, modification, vacatur, or invalidation of any state-court judgment.

81. Plaintiff seeks only prospective relief directed toward future conduct, communications, reporting activity, account administration, and borrower-designation activity to the extent permitted by applicable law.

## DAMAGES

82. Plaintiff incurred certified-mail expenses, postage, copies, travel, mileage, transcript requests, record requests, and investigation costs.

83. Plaintiff estimates spending thousands of hours investigating and responding to the conduct alleged herein.

84. Plaintiff suffered continuing financial harm, uncertainty, administrative burdens, and expenses incurred in investigating and responding to Defendants' conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Award actual damages;

B. Award statutory damages as authorized by law;

C. Grant declaratory relief concerning the rights, authority, and obligations of the parties;

D. Grant injunctive relief requiring Defendants to cease unauthorized account-administration activity, borrower-designation activity, tax-reporting activity, and related conduct inconsistent with applicable law;

E. Award costs as permitted by law;

F. Award pre-judgment and post-judgment interest as permitted by law; and

G. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

/s/ Mary Jonguitud

Mary Jonguitud
Plaintiff, Pro Se

206 Cedar Avenue, Unit 20
Lake Villa, Illinois 60046

Telephone: 630-688-1103
Email: maryjonguitud2013@gmail.com

Date: June 29 , 2026                                                              Page:     8
Time: 6:00 AM

# MASTER EXHIBIT INDEX

## EXHIBIT A

## LOAN ORIGINATION DOCUMENTS

Documents Included:

- Promissory Note
- Loan Application Documents
- Initial Disclosures
- Closing Documents
- Signature Affidavit
- Riders and Addenda
- Truth-in-Lending Documents
- Borrower-Executed Loan Records

Referenced In:

- Section A – Loan Origination and Mortgage Documents

## EXHIBIT B

## RECORDED MORTGAGE AND RECORDING RECORDS

Documents Included:

- Recorded Mortgage
- Certified Mortgage Copies [upon request]
- Recorder Records
- Recording Information
- Recording Confirmations

Referenced In:

- Section A – Loan Origination and Mortgage Documents

## EXHIBIT C

## ASSIGNMENT OF MORTGAGE AND OWNERSHIP RECORDS

Documents Included:

Date: June 29 , 2026                                              Page:      9
Time: 6:00 AM

- Assignment of Mortgage
- MERS Records
- MIN Search Results
- Ownership Records
- Transfer Records
- Investor Information

Referenced In:

- Section B – Funding, Acquisition, and Assignment History

**EXHIBIT D**

**SERVICING TRANSFER AND LOAN OWNERSHIP RECORDS**

Documents Included:

- October 13, 2021 Sale Letter
- October 14, 2021 Servicing Letter
- New Rez Fort Washington Correspondence
- GMNA II Correspondence
- Boarding Letters
- Ownership Communications
- Servicing Records
- Account Records

Referenced In:

- Section B – Funding, Acquisition, and Assignment History

**EXHIBIT E**

**DEATH OF SAMUEL S. JONGUITUD**

Documents Included:

- Death Certificate
- Notice of Death Correspondence
- Delivery Confirmations
- Related Servicing Communications

Referenced In:

Date: June 29 , 2026                                                    Page:     10
Time: 6:00 AM

- Section C – Death of Samuel Jonguitud and Estate Designation

## EXHIBIT F

## ESTATE DESIGNATION RECORDS

Documents Included:

- Account Statements
- Estate Designation Records
- Borrower Information Records
- Account Screenshots
- Servicing Records
- Related Communications

Referenced In:

- Section C – Death of Samuel Jonguitud and Estate Designation

## EXHIBIT G

## IRS TAX REPORTING RECORDS

Documents Included:

- 2021 Form 1098
- 2022 Form 1098
- 2023 Form 1098
- 2024 Form 1098
- Form 1099-A
- Tax Reporting Correspondence

Referenced In:

- Section F – Tax Reporting and Borrower Designation

## EXHIBIT H

## QUALIFIED WRITTEN REQUESTS, NOTICES OF ERROR, AND REQUESTS FOR INFORMATION

Documents Included:

Date: June 29 , 2026      Page:    11
Time: 6:00 AM

- June 11, 2025 QWR
- October 31, 2025 QWR/NOE
- December 23, 2025 QWR/NOE
- Certified Mail Receipts
- USPS Tracking
- Delivery Confirmations
- Follow-Up Correspondence

Referenced In:

- Section E – QWRs, Notices of Error, and Regulatory Complaints

## EXHIBIT I

## SHELLPOINT AND NEWREZ RESPONSES

Documents Included:

- Shellpoint Response Letters
- CFPB Response Letters
- IDFPR Response Letters
- Validation of Debt Packets
- Ownership Correspondence
- Investor Correspondence
- Servicing Responses

Referenced In:

- Section E – QWRs, Notices of Error, and Regulatory Complaints

## EXHIBIT J

## FORECLOSURE COURT RECORD

Documents Included:

- Foreclosure Complaint
- Orders
- Docket Entries
- Summary Judgment Order
- Sheriff's Sale Documents
- Sheriff's Deed

Date: June 29 , 2026                                    Page:      12
Time: 6:00 AM

- Order Confirming Sale
- Post-Sale Orders
- Appellate-Related Filings

Referenced In:

- Section D – Foreclosure Timeline
- Section G – Post-Sale Conduct